FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 30, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHN GRIFFIN HEADRICK,

                    Plaintiff,

  v.

AARON BROWN, SCOTT LUTTON,
KERRY DEYOUNG, DANIEL
JONES, and JOHN DOE(S),

                  Defendants.

NO:  2:24-CV-0366-TOR

ORDER DISMISSING ACTION

BEFORE THE COURT is Plaintiff John Griffin Headrick's First Amended Complaint and Motion to Appoint Counsel. ECF Nos. 13 and 14. Plaintiff, a prisoner currently housed at the Airway Heights Corrections Center, is proceeding *pro se* and *in forma pauperis*. ECF No. 5. Defendants have not been served.

The Court severed Plaintiff's claims from those of Co-Plaintiffs Kurt Jeffrey Angelone and Adam Persell, and directed that Plaintiff proceed in his individual action. ECF No. 16. Plaintiff seeks monetary damages and injunctive relief for

ORDER DISMISSING ACTION -- 1

alleged Eighth Amendment violations and state law claims of negligence and assault and battery.  ECF No. 13 at 5–40.

As a general rule, an amended complaint supersedes the original complaint and renders it without legal effect.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987) (citing *London v. Coopers & Lybrand,* 644 F.2d 811, 814 (9th Cir. 1981))*, overruled in part by Lacey,* 693 F.3d at 928 (any claims voluntarily dismissed are considered to be waived if not repled).

Furthermore, defendants not named in an amended complaint are no longer defendants in the action.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, Defendants Washington State Department of Corrections, Superintendent Ronald Haynes, AHCC, Lance Hall, Sgt. D. Young, Sgt. McKinney, Jane and John Doe Correctional Officers and Personnel from the original complaint were terminated and Defendants Scott Lutton, Kerry DeYoung, and John Doe(s) were added.

Liberally construing the entirety of the First Amended Complaint in the light most favorable to Plaintiff, the Court finds that he has failed to state a claim upon which this Court can grant him relief.

**PLAINTIFF'S ALLEGATIONS**

Plaintiff accuses Defendants Brown, Lutton, Deyoung, Jones and Doe(s) of "misuse of force," "cruel and unusual punishment," and "deliberate indifference" in violation of the Eighth Amendment.  ECF No. 13 at 5, 16 and 27.  Plaintiff states that on February 15, 2023, Defendants Brown and Lutton accessed the prison armory without prior authorization and "retrieved an expired live CS Riot Control Continuous Discharge Grenade (CS Grenade), a tear gas chemical weapon munition".  *Id.* at 5–6.  Plaintiff states that Defendant Brown "moved security cameras to conceal his actions" and then, without a certified instructor present, conducted an unauthorized training exercise by igniting the CS Grenade.  *Id.* at 6.

Plaintiff avers Defendant Brown "failed to take preventative measures and actions to protect Plaintiff's health, welfare and safety, causing Plaintiff to be injured." *Id.*  Plaintiff states the CS Grenade was ignited "near the vicinity of T-Unit's HVAC system, rather than in a "containment barrel" which allowed the "CS tear gas to enter T-Unit's HVAC system causing primary exposure not secondary exposure." *Id.*

Plaintiff asserts Defendant Brown had a "documented history of conducting unauthorized . . . training exercises with chemical agents around prisoners," as one month earlier he "filled a cell with [Oleoresin Capsilum] OC, had staff clear gas masks and had them remain in the cell to see who could last the longest in an OC

environment." *Id.* at 7. Plaintiff contends that this failure to obtain authorization to use "a live CS Grenade, outside of AHCC's prisoner housing units and within the Airway Heights community" violated a state statutory provision. *Id.*

Plaintiff states that he, "the cells, the day room and showers" were exposed to the CS tear gas, and he was left in his contaminated cell. *Id.* at 7. He avers the HVAC system was "turned off not allowing the CS tear gas to dissipate with fresh air circulation and deprived Plaintiff of fresh air, which lasted for over eight hours, forcing him to breath the stagnant and toxic air filled with tear gas." *Id.* Plaintiff accuses Defendant Brown of failing to "follow decontamination protocols or procedures to decontaminate the unit or cells"; "contact medical staff to evaluate or treat Plaintiff for exposure to the CS tear gas"; "allow Plaintiff a decontamination shower, have clean clothing and fresh bedding"; and "give Plaintiff fair notice or warning of possible exposure, a copy of the Safety Data Sheet for CS tear gas exposure, that Plaintiff might know what chemical he is/was exposed to and instructions how to decontaminate." *Id.* at 8. Plaintiff also claims Defendant Brown "falsified the truth about the incident, stating the fumes were from a fire inside the HVAC electrical system." *Id.* at 8. Plaintiff states that Defendants Brown and Lutton, in violation of DOC policy and state law, failed to report their conduct to the Duty Officer. *Id.* at 8.

Plaintiff accuses Defendants Lutton, Deyoung, Jones and Doe(s) of cooperating in the "misuse of force with Brown" by failing to intervene and prevent him from igniting the CS Grenade outside a containment barrel, which allowed the "CS tear gas to enter into T-Unit's HVAC system subjecting Plaintiff to exposure." *Id.* at 8–9. Plaintiff accuses them of similar failures to mitigate continued exposure to prisoners, or to report what had happened. *Id.* at 9–10.

Plaintiff asserts "This use of force with a CS Grenade on Plaintiff who was secure in his cell sleeping and posed no risk, may have caused him more serious harm (the long-term effects he is still experiencing, may develop into a chronic lung disorder) or death, and was not justified because this was not a situation where prison staff were attempting to restore order, subdue recalcitrant prisoner or prevent an escape." *Id.* at 10–11. Plaintiff contends that Defendant Brown's unauthorized training exercise in January 2023 "demonstrates a reckless and callous disregard towards the plaintiff and other prisoner's health, welfare, and safety. Therefore, Plaintiff have demonstrated the defendant's misuse of force was wanton and unnecessary." *Id.* at 11 (as written in original). Plaintiff emphasizes a "duty of care" owed to him by Defendants when the CS Grenade was "dispersed outside through the air in an uncontrollable environment and flow into T-Unit's HVAC system." *Id.*

1    Plaintiff states that he complained to medical staff ten days after the incident

2    that he was "having a hard time breathing normally, his eyes stinging, blurred vision,

3    a headache and itching."  ECF No. 13 at 14–15 (as written in original).  He claims

4    the "CS" caused him to suffer nosebleeds and have excessive debris in his nose.  *Id.*

5    at 15.  Approximately, eighteen days after the incident, Plaintiff advised medical

6    staff that he was "fatigued" and had aggravated "sinus issues."  *Id.* at 15.  Plaintiff

7    states that he "pleaded to his provider asking him to intervene to have custody staff

8    stop using CS and OC around vulnerable inmates, as the Plaintiff's lungs had been

9    compromised with COVID and Long-COVID." *Id.* (as written in original).  Plaintiff

10    indicates that he was prescribed a "steroid[.]" *Id.*  He does not allege any further

11    deployments of "CS" or "OC" near him.

12    Plaintiff states that after completing the steroid treatment, he was "still

13    experiencing light-headedness, unable to focus his vision, tightness and shortness of

14    breath, and unable to concentrate." *Id.*  He states that approximately fifteen months

15    after the incident, he contacted medical staff about "a type of mental blackout, which

16    relate to (1) PTSD; (2) complex partial seizure; (3) dissociation; or (4) dissociative

17    fugue." *Id.*

18    The Eighth Amendment's prohibition of cruel and unusual punishment

19    imposes duties on prison officials to provide prisoners with the basic necessities of

20    life such as food, clothing, shelter, sanitation, medical care and personal safety.  *See*

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney,* 509 U.S. 25, 31 (1993).   To state a claim for unconstitutional conditions of confinement, a prisoner must allege that a Defendant's acts or omissions deprived the prisoner of "the minimal civilized measure of life's necessities" and that the Defendant acted with deliberate indifference to an excessive risk to inmate health or safety.  *See* Farmer, 511 U.S. at 834.

Here, Plaintiff presents no factual allegations from which the Court could infer that Defendants "maliciously and sadistically" planned to deploy tear gas into the prison HVAC system for "the very purpose of causing harm."  *See Whitley v. Albers,* 475 U.S. 312, 320–21 (1986).  Rather, Plaintiff describes an ill-planned and unauthorized training exercise, without proper containment, that resulted in tear gas entering the unit HVAC system.  While this may constitute negligence, negligence is not actionable in an action pursuant to 42 U.S.C. § 1983.  *Davidson v. Cannon,* 474 U.S. 344, 347–48 (1986).  Furthermore, the failure to follow prison policy does not establish a constitutional violation.  *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009).

In addition, Plaintiff has attached exhibits stating, "Unfortunately, due to a sudden shift in the wind, the product being used traveled from outside the training location, towards T Unit.  The unit air handlers were shut down as quickly as possible, to limit any secondary exposure to the staff or incarcerated population.

Prior to the unit air handlers being turned back on, the AHCC maintenance department changed the air filters in the T unit HVAC system." ECF No. 13 at 65.

When exhibits are attached to a complaint, the exhibits are deemed part of the complaint for all purposes, including for purposes of determining the sufficiency of the claims. *See* Fed.R.Civ.P. 10(c); 5A Wright & Miller, Federal Practice and Procedure: Civil 3d § 1327, at 443–44 (2002). If an exhibit attached to a complaint contradicts an assertion in the complaint and reveals information that prohibits recovery as a matter of law, the information provided in the exhibit trumps the allegation in the complaint. *Wilson v. Fitter*, 2009 WL 6908049, at *2 (C.D. Cal. Nov. 5, 2009) *report and recommendation adopted*, 2010 WL 3893992 (C.D. Cal. Sept. 30, 2010) (citing *Riggins v. Walter,* 279 F.3d 422, 425–26 (7th Cir. 1995) (affirming dismissal of prisoner's § 1983 claims where information in attached exhibit contradicted allegation of complaint); *Hudson v. Phillipson*, 2008 WL 356884, *3 (W.D. Mich. Feb.7, 2008) (dismissing prisoner's § 1983 claims where information in attached exhibits conflicted with allegations of complaint)).

Here, the attached description of an unfortunate "sudden shift in the wind" does not support an Eighth Amendment claim that Defendant Brown acted with deliberate indifference to Plaintiff's safety when deploying the tear gas. Again, while Defendant Brown may have acted negligently or in violation of DOC policy,

such claims do not state a constitutional violation.  *See Davidson,* 474 U.S. at 347–48; *Cousins*, 568 F.3d at 1070.

As Plaintiff points out, the failure to provide a prisoner with decontamination procedures after exposure to OC spray can establish a claim for deliberate indifference.  *See Clement v. Gomez*, 298 F.3d 898 (9th Cir. 2002); ECF No. 13 at 29.  In *Clement*, however, the plaintiffs alleged that they were "calling out to prison officials for medical attention and to be taken from their cells and allowed to shower."  *Id.* at 902.  In addition, the plaintiffs alleged that the officers were "coughing and gagging and took turns stepping outside for fresh air."  *Id.* at 905.  Furthermore, those plaintiffs "allegedly made repeated requests for attention, complaining of breathing problems, pain and asthma attacks" and some were "coughing, gagging or choking."  *Id.*

In his "Count IV" Plaintiff states that "[t]he CS woke up plaintiff, it was hard for him to breath, plaintiff was in severe pain and he banged and yelled out his door.  Plaintiff knew it was something serious when he heard the defendants coughing, clearing their throats, eyes red and watery when going by, watching the officers go in and out of B-side towards the front of the unit that leads outside.  Defendants decided not to contact medical staff after exposing plaintiff and other inmates to CS gas unless someone first claimed a medical emergency or an emergency grievance."  ECF No. 13 at 28 (as written in original).

"Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 at 837.  An "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

Although Plaintiff states he observed unspecified Defendants with red and watery eyes, coughing and clearing their throats and heading "towards the front of the unit that leads outside," ECF No. 13 at 28, he does not allege that they were "gagging" or "choking" or "took turns stepping outside for fresh air." *Clement,* 298 F.3d at 905.  Plaintiff makes no allegation that he displayed obvious signs of difficulty breathing, such as coughing or gagging, on February 15, 2023.  He does not allege that he told identified Defendants he suffered from preexisting respiratory issues, or was in pain or was having a hard time breathing.  He does not allege that he requested emergency medical treatment, a decontamination shower, or clean clothing and bedding on February 15, 2023, and was refused.

Plaintiff indicates that he performed his "own decontamination" when allowed to exit his cell eight hours after the 3 a.m. deployment.  ECF No. 13 at 30. Plaintiff indicates that he first contacted medical staff ten days after the exposure,

and he was treated with a steroid a week later. *Id.* at 14–15. As presented, Plaintiff has failed to state an Eighth Amendment claim of failure to provide emergency medical care on February 15, 2023, upon which this Court can grant relief.

Under the circumstances of this case, the Court finds that further amendment would be unavailing. *See Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1041 (9th Cir. 2011). In the absence of a viable federal constitutional claim, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Nevertheless, the Court will dismiss this action without prejudice to Plaintiff pursuing those claims.

**ACCORDINGLY**, **IT IS ORDERED:**

1. The First Amended Complaint, ECF No. 13, is **DISMISSED without prejudice** to Plaintiff pursing his state law claims in the appropriate forum.

2. This dismissal will not count as a dismissal under 28 U.S.C. § 1915(g). *See Harris v. Harris*, 935 F.3d 670 (9th Cir. 2019).

3. The Motion to Appoint Counsel, ECF No. 14, is **DENIED as moot.**

4. Plaintiff's *in forma pauperis* status is hereby **REVOKED.**

5. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact.

1    The Clerk of Court is directed to enter this Order and Judgment accordingly,

2  provide copies to Plaintiff, and **CLOSE** the file.

3    **DATED** October 30, 2024.



THOMAS O. RICE
United States District Judge

ORDER DISMISSING ACTION -- 12